IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-03-258(2) |
| | § | C.A. No. C-06-136 |
| ROMEO BOTELLO, JR., | § | |
| | § | |
|     Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
RESPONDENT'S  MOTION TO DISMISS,
DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Romeo Botello, Jr.'s ("Botello") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  (D.E. 195.)[1] It was received by the Clerk on March 24, 2006, and is deemed filed as of March 20, 2006.[2]  The Court ordered the government to respond, and the government filed a combined response and motion to dismiss on June 7, 2006.  (D.E. 204.)  After Botello did not file a reply, the Court issued a memorandum opinion and order denying his § 2255 motion and final judgment was also entered. (D.E. 227, 228.)  Botello subsequently established to the Court that he was

---

[1] Dockets entries refer to the criminal case, C-03-cr-258.

[2] Botello's motion indicates that it was executed on March 20, 2006.  That is the earliest date it could have been delivered to prison authorities, and it is thus deemed filed as of that date.  Houston v. Lack, 487 U.S. 266, 276 (1988) (a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for mailing, postage pre-paid).  See also United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992) (providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings).

1

not timely served with a copy of the government's response or motion to dismiss. Accordingly, the Court vacated its prior order and final judgment in order to permit Botello to file a reply. (D.E. 252.) The Clerk received Botello's reply on February 5, 2007. (D.E. 253.) The Court has considered the reply, but nonetheless finds that its original analysis was correct. That is, nothing in Botello's reply changes the Court's original conclusion that his claims are all subject to dismissal.

Accordingly, and for the reasons set forth herein, the Court GRANTS the government's motion to dismiss, and DISMISSES Botello's § 2255 motion. The Court also DENIES Botello a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTS AND PROCEEDINGS

**A.    Summary of the Offense**[3]

The indictment in this case arose as the result of four marijuana seizures and the follow-up investigation. Botello was one of the transporters and also allowed his tractor to be used by other transporters to haul loads of marijuana. First, on April 26, 2003, an asphalt tanker trailer loaded with 843 kilograms of marijuana was stopped. The sole occupant during that seizure later debriefed and stated that the tractor used belonged to Botello.

---

[3] The information in this section is derived from Paragraphs 4 through 11 of the Presentence Investigation Report and from trial testimony.

On July 18, 2003, Botello was the driver and sole occupant driving an asphalt tanker trailer north on Interstate US 77. He pulled into the Riviera Scale Facility. An inspector checked Botello's driver's license and discovered that Botello had an outstanding warrant.

A trooper ran a drug-sniffing dog around the trailer, and the dog alerted to the front, middle and rear of the tanker-trailer. After opening the back hatch, the trooper found several bundles or marijuana wrapped in cellophane inside the tanker trailer. The net weight of the marijuana was 826.46 kilograms. Botello was arrested.

When the remainder of the vehicle was searched, a glass crack pipe was discovered behind the driver's seat in the sleeper area. The pipe was wrapped in an old traffic violation warning, and Botello denied owning the crack pipe. A Department of Public Safety Narcotics Officer, Sergeant Otto Arnim, was called to the scene. When he arrived, Sergeant Arnim recognized the asphalt tanker because he had seen it at Erasmo Zapata's[4] house in April 2003. As mentioned, the same tanker had been used to transport marijuana during a previous marijuana seizure in April 2003.

When questioned at the scene, Botello stated that Joe Champion (one of his co-defendants herein), was the owner of the asphalt tanker truck, and Champion initially admitted to authorities that he owned the vehicle. Champion then called authorities back and stated that he did not own the vehicle, but that it had been sold. Zapata, who testified at both trial and sentencing, stated during a debriefing that Botello had transported at least two loads of marijuana per month for Champion and that each load consisted of at least 680

---

[4] Zapata testified against Botello, both at trial and at his sentencing.

kilograms.

**B.     Criminal Proceedings**

On September 23, 2003, Botello was charged in an indictment with two co-defendants.  (D.E. 1.)  Botello was named in the second and third counts.  Specifically, Count Two charged him with possession with intent to distribute approximately 828 kilograms of marijuana on or about July 18, 2003, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  The third count charged him with conspiring to possess with intent to distribute more than 1000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, from on or about May 1, 2001 to June 18, 2003.

Botello pleaded not guilty, and a jury trial was held on November 4, 5, and 6, 2003. (D.E. 53, 57, 58.)  On November 6, 2003, the jury returned a guilty verdict as to both counts.  (D.E. 61.)  The Court ordered the United States Probation Office to prepare a Presentence Investigation Report, and Botello, through counsel, filed written objections to the report. (D.E. 99, 100.)

On February 2, 2004, the Court received a letter from Botello in which he stated that he wanted a new trial, and also asked for a new attorney.  When the parties appeared for sentencing on February 5, 2004, the Court heard from both Mr. McGuire and Botello regarding the defendant's motion for substitute counsel, and denied the motion.  The Court reset the case to February 26, 2004, when it was called again for sentencing.

On that date, the Court heard testimony from both Champion and Zapata regarding the drug amounts involved in the conspiracy.  The Court stated that it would not use

uncorroborated testimony from Zapata to determine drug amounts in the case, because the Court did not believe Zapata was a credible witness. As a result of the Court discounting Zapata's testimony, Botello's base offense level was reduced from 34 (which is what the PSR had calculated) to 32. There were no adjustments or other changes to his offense level. (D.E. 151, Sentencing Transcript ("S. Tr.") at 68-71, 74-75.) The Court sentenced Botello to 121 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term, and imposed a $1000 fine and a $100 special assessment on each count. (D.E. 125, 128 .) Judgment of conviction and sentence was entered on March 5, 2004. (D.E. 128.) At the conclusion of Botello's sentencing, the Court appointed Mr. McGuire to represent Botello on appeal. On Botello's behalf, Mr. McGuire timely appealed. (D.E. 130.) The Fifth Circuit affirmed in a per curiam opinion issued November 24, 2004. (D.E. 161.) Botello filed a petition for writ of certiorari, which the Supreme Court denied on March 21, 2005. (D.E. 168.)

Botello filed his motion pursuant to 28 U.S.C. § 2255 on March 20, 2006.[5] As noted, the government filed a response and motion to dismiss (D.E. 204.) Botello has also filed a reply. (D.E. 253.)

### III. MOVANT'S ALLEGATIONS

In his § 2255 motion, Botello lists five grounds for relief, all of which are ineffective assistance of counsel claims. First, he claims that he was denied effective assistance of counsel because his court-appointed attorney failed to request an accomplice jury

---

[5] See supra note 2.

instruction. Second, he claims that his counsel was constitutionally ineffective for failing to object to a biased juror which "tainted the jury." Third, he claims that his counsel failed to conduct an adequate investigation and failed to "pursue exculpatory evidence." Fourth, he claims that his counsel failed to advise him that he could plead guilty and receive a lesser sentence by accepting responsibility. Fifth and finally, he asserts a general claim that his counsel's alleged "cumulative errors and omissions" deprived him of his rights to due process and violated his Fifth and Sixth Amendment rights.

## IV.  DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.     Ineffective Assistance of Counsel**

    **1.     Standards For Evaluating Ineffective Assistance Claims**

Botello's claims are all ineffective assistance of counsel claims and are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

    **2.     Alleged Failure to Request an Accomplice Jury Instruction**

Botello's first ground for relief is easily resolved. He claims that his counsel failed to request a jury instruction regarding accomplice liability. In fact, however, as Mr. McGuire points out in his affidavit, the jury instructions contained an accomplice witness instruction. (D.E. 59 at 7-9; D.E. 196, Exh. 1, McGuire Aff. at 1.) Thus, Botello's claim

is premised on a fact directly contradicted by the record. This claim fails.

### 3. Alleged Failure to Object to Biased Juror

In his second ground for relief, Botello claims that his counsel was deficient for failing to object to the inclusion on the jury of Juror 11. According to the juror's statements during voir dire, she went to high school with Botello and his brother.

In his reply, Botello emphasizes that it was not the fact that the juror knew Botello and his brother, but the alleged "fact" that the juror was afraid of Botello. He claims that the fact that a juror was scared of him but allowed to stay on the jury "tainted the entire jury and left a negative impression on the jury, prejudicing the petitioner." (D.E. 253 at 3.)

The record does not reflect that Mr. McGuire was deficient on this issue. In his affidavit, Mr. McGuire avers that he spoke to Botello during jury selection (and later at sentencing) regarding the fact that Juror A-31 (later Juror 11 at trial) knew Botello. He avers that Botello expressed confidence in the panel member's ability to be fair and impartial, so no defense challenge was lodged against her. (D.E. 204 at Exh. 1, McGuire Aff. at ¶ 2.)

This claim also fails because Botello cannot show prejudice. Indeed, Botello admitted at the initial call for sentencing on February 15, 2006, that he did not have any evidence to show he was prejudiced by their acquaintance. (D.E. 147, Transcript at 8-12.) Moreover, although he claims that the juror was afraid of him, no evidence was presented to the Court showing that Juror 11 had expressed any fear of Botello at all. Instead, immediately after the Court sent the jury to begin deliberations and discharged the two

alternate jurors, Juror 13, one of the alternates, asked to approach the bench. Outside the presence of the jury, the following discussion occurred:

> ALTERNATE JUROR NUMBER 13: During the start of this proceedings, Number 11 went to high school with one of the Defendants. I would hate to think down the road she exhibits some problems or gets any harassment because she was one of the 12, voting members. Sorry, I sound nervous, first time up. But I would be more than willing to take her spot in Number 11, just so something down the road does not happen to her.
>
> THE COURT: She'll be fine.
>
> ALTERNATE JUROR NUMBER 13: Okay. All right.
>
> THE COURT: Thank you, sir. You're excused.
>
> ALTERNATE JUROR NUMBER 13: Thank you.

(D.E. 109, Transcript of Day 3 of Jury Trial at 62-63.) The Court then asked counsel if they agreed with the Court's disposition of that issue. In response, Botello's counsel expressed that he was "just a little concerned that there's some kind of outside influence that may be affecting the jurors' deliberations in there." (Id. at 64.) The Court expressed that it thought Alternate Juror 13 was just being "noble," but nonetheless called him back to the courtroom to determine if Juror 11 had said anything to him.

The following discussion took place:

> THE COURT: Juror 13, when you mentioned what you did, had Juror Number 11 said anything to you?
>
> ALTERNATE JUROR NUMBER 13: No, sir.
>
> THE COURT: Okay, it was just –

9

>    ALTERNATE JUROR NUMBER 13: No, sir, she did not.
>
>    THE COURT: Okay.
>
>    ALTERNATE JUROR NUMBER 13: No.

(Id. at 67.) The Court gave defense counsel the opportunity to question the juror, but no one did.

Based on the record, then, there is absolutely no evidence, nor has Botello provided any, to show that Juror 11 was in fact worried or in fear about serving because she used to know Botello in high school. Rather, the record reflects only that Juror 13 may have thought that Juror 11 faced some reprisal or problems if she participated as a juror.

Even assuming this alternate juror's expression of fear for another juror's safety showed bias against defendant,[6] the alternate juror never participated in deliberations and did not render a verdict. Instead, he was excused before deliberations began. Thus, there is no prejudice to Botello from this juror's bias, because it could not have affected the jury's deliberations or verdict. United States v. Ramirez, 963 F.2d 693, 703 (5th Cir. 1992) (a juror's failure to disclose that she knew the prosecutor's wife from PTA "could not have prejudiced" defendant where the district court excused the juror in question before jury deliberations); see Smith v. Whisman, 431 F.2d 1051, 1054-55 (5th Cir. 1970) (improper exclusion of veniremen in selection of alternate juror did not invalidate sentence where alternate juror did not participate in deliberations or verdict, despite defendant's allegations

---

[6] See United States v. Taylor, 554 F.2d 200 (5th Cir. 1977) (district court abused its discretion in not excusing a juror who informed the court that she lived near the defendants, that she had been a victim of the defendants and who expressed fear for her life).

that the alternate's mere presence and association with the regular jurors influenced the final verdict). Thus, no claim can be based on any bias of Juror 13.

To the extent Botello is claiming that he was prejudiced by alleged bias of Juror 11, his claim also fails. As noted, Botello is unable to provide any evidence whatsoever that Juror 11 was in fact afraid of him and, if so, how that prejudiced him as a result. Because he cannot establish prejudice, this claim fails.

### 4. Alleged Failure To Investigate and Obtain Exculpatory Evidence

In his third claim for relief, Botello alleges that his counsel failed to investigate and present evidence impeaching government witness Eddie Zapata. In his reply, he argues that his counsel should have impeached Zapata by questioning him about: (1) his bias due to his expectation of lenient treatment by the prosecution; and (2) his previous contradictory statements to law officers. He claims that his counsel failed to investigate Zapata or to conduct a vigorous, effective cross-examination.

Botello's claim is belied by the record. In fact, as noted by Mr. McGuire in his affidavit, Zapata was cross-examined at both the guilt and innocence phase and the punishment phase of the trial. He was asked about both his prior criminal history and the deal he had made with prosecutors. Additionally, based on Mr. McGuire's questioning of Zapata, among other factors, the Court determined that Zapata was not a credible witness and discounted his testimony when determining Botello's guideline range. (S. Tr. at 69-70, 71.) In fact, Botello received a two-level reduction in his offense level as a result, reducing his sentencing range from 151-188 months to 121-151 months. (S. Tr. at 72-74.) Thus, the

11

record simply does not support Botello's contention that Mr. McGuire did not cross-examine Zapata.

To the extent Botello's claim is that Mr. McGuire did not investigate Zapata further, he offers absolutely no evidence as to what such investigation would have revealed or how it would have changed the outcome of his trial. His claim fails for this reason alone. United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Moreover, there is no presumption of prejudice based on a failure to investigate. Woodard v. Collins, 898 F.2d 1027, 1029 (5th Cir. 1990). Because Botello has not raised any specific facts that would show prejudice as a result of counsel's alleged failure to investigate, this claim fails.

### 5. Alleged Failure to Inform Botello That He Could Have Pleaded Guilty Without a Plea Agreement

Botello next claims that his attorney failed to inform him that he could have pleaded guilty without a plea agreement. Mr. McGuire addresses this contention in his affidavit, testifying that:

> I advised Mr. Botello that if he pled Guilty to a single Count, the Government would dismiss the remaining Count, would recommend that he be given maximum credit for Acceptance of Responsibility, and would recommend that he be sentenced at the lowest end of the applicable guideline range. I further advised him that is he cooperated with the Government, it was possible the Government would recommend a downward departure. Mr. Botello at all times maintained his actual innocence and refused to consider pleading Guilty under any circumstances.

(D.E. 204, Exh.1, McGuire Aff. at ¶ 4.)

Even in the absence of Mr. McGuire's affidavit, the Court finds Botello's assertion that he did not know he had a right to plead guilty untenable. He was asked how he pleaded at his arraignment, guilty or not guilty, and chose to plead not guilty. This shows that he knew he had a choice. Additionally, Botello's co-defendant, Jose Champion, pleaded guilty. This, too, is evidence that Botello knew he had the option to plead guilty. The record as a whole simply does not support his contention that he did not know he could plead guilty.

In any event, it is unnecessary to determine whether his counsel was deficient, because Botello cannot establish prejudice. In order to establish that he was prejudiced by his counsel's alleged failure to inform him of his right to plead guilty, Botello must show that, had he been informed of this right, he would have pleaded guilty and would have received a lesser sentence. Although he summarily states in his affidavit that he would have pleaded guilty (See D.E. 195 at Affidavit), the record does not support such a finding, particularly in light of his continued insistence throughout the proceedings that he was innocent of the charged crime. (D.E. 195 at 5.) Moreover, he cannot show that he would have received a lesser sentence. Although it is possible that he would have received an adjustment for acceptance of responsibility had he pleaded guilty, it is by no means a certainty. See United States v. Faubion, 19 F.3d 226, 228-230 (5th Cir. 1994) (rejecting claim that trial counsel rendered ineffective assistance of counsel by encouraging defendant

to proceed to trial). Accordingly, Botello has failed to show prejudice and his ineffective assistance claim on this ground fails.

### 6. Alleged Violation of Due Process as a Result of Cumulative Errors by Counsel

As noted above, the Court has not found that Botello was denied the effective assistance of counsel as to any of the individual actions by his counsel that he alleges were deficient. Accordingly, "cumulative" error is not grounds for relief. United States v. Hall, 455 F.3d 508, 520-21 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.") (citing Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000) and Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993)).

Accordingly, the Court does not find that Botello was denied effective assistance of counsel as alleged in any of his claims. For the above reasons, the government's motion to dismiss is GRANTED, and Botello's § 2255 motion is DENIED.

### C. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Botello has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether

the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002)(relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Botello's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Botello is not entitled to a COA as to his claims.

### V. CONCLUSION

For the above-stated reasons, the Court GRANTS the government's motion to dismiss (D.E. 204) and DISMISSES Botello's motion. (D.E. 195.) The Court also DENIES

Botello a Certificate of Appealability.

    ORDERED this 23rd day of March, 2007.

                                                       _____
                                                          HAYDEN HEAD
                                                          CHIEF JUDGE